All right. Hear ye, hear ye, hear ye. This Honorable Appellate for the 2nd District is back in session, pursuing to adjourn it. The Honorable Anne Drackley-Gorsuch is back. Please be seated. Your Honor, this final case of the morning, call 2-12-072, State Farm Mutual Auto Insurance v. Diana McFadden, at call. On behalf of the Appellant, Mr. Michael Lule, on behalf of the Appellant, Mr. Frank Stevens. Both sides ready to proceed? Yes. Then you may proceed when you're ready. May it please the Court, I received an order asking me to augment my written materials verbally with some issues that were not raised but were raised in the lower court. May I have an extra five minutes in order to accomplish this? Okay. Thank you very much. The extra issues I assumed that you wanted to hear about was the stackability of the policies issued. Here, the McFadden's were issued five, for five vehicles, they were issued each a separate policy of coverage by State Farm. Each policy had its own declaration sheet and on each declaration sheet it assigned its own $100,000 in UIM coverage. Each had a corresponding premium specifically for each UIM coverage. The McFadden's assert that by this expression they reasonably believe that they purchased five separate $100,000 UIM coverages, thusly a total of $500,000. Outside of what is expressed in the declaration sheets, the policy booklet itself contains the following clause. If underinsured motor vehicle coverage for bodily injury is available to an insurer from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of a single policy providing the highest limit of liability. While both expressions on their own are clear, when put together in the same policy they are in conflict, so by definition, ambiguous. Ambiguities, as court well knows, must be construed against the carrier who drafted these documents and liberally in favor of the insurer to allow cumulative coverage. Now State Farm may argue that its declaration sheets, as written, do not reasonably express that McFadden's purchased five separate $100,000 UIM coverages, one for each vehicle policy. However, our Supreme Court has held otherwise. In Glidden 1974, the Supreme Court was confronted with the same thing. Three vehicles were insured under three separate policies and on three separate declaration sheets, one for each car, each recited $10,000 in UIM coverage and charged a separate premium for each. In Squire in 1997, the Supreme Court was confronted with two vehicles insured under one policy, but each had its own declaration sheet and recited a UIM coverage for each vehicle with its own premium. In both cases, the Supreme Court said that the carrier had, by this, expressed that it sold a separate and additional coverage for each vehicle, meaning cumulative coverage amounts, and specifically in Glidden the Court said, when an insurer purchases three distinct policies from an insurer, each providing the specified coverage and pays a separate premium for each, does he reasonably contemplate that the, quote, other insurance clauses therein are effective to reduce his recovery to what he would have obtained under one policy? Did any of those cases involve anti-stacking clauses similar to the clause, specifically says, except as provided in the foregoing paragraph that the insurer has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the applicable limits of liability of this insurance and such other insurance. Counsel, you were the Armstrong case in this district. I am. Isn't the Armstrong case against your position? I believe the Armstrong case did, was not confronted with declaration sheets that were in conflict with the anti-stacking provisions, whereas in Glidden they were, and the Supreme Court has a very clear anti-stacking clause. However, at this point I'm just explaining to the Court that the declaration sheets in this case, according to Squire and according to Glidden, do express five separate coverages which otherwise impart stackability. The Squire case, the carrier argued that it meant to express that it only sold one U.M. coverage for both vehicles to share, but the Supreme Court pointed out that this would be inconsistent with expressing them twice, once for each vehicle on two separate declaration sheets. The carrier countered that this was merely an expression that an additional premium was being paid for the additional risk that picked up by the added car. The Court pointed out that this could not be, since there was no added risk by adding the car, since the law, mandates that the first policy cover the insureds no matter what vehicle they're in. Therefore, the Supreme Court has already ruled that the expression of coverage made by State Farm to the McFadden's in the declaration sheets is of multiple cumulative coverages. If there can be any doubt, we can visit Bruder, 1993, and Hobbs, 2005. In both cases, the insured had two vehicles. The insured was insured under one policy with one declaration sheet that listed both cars. But in those cases, the carrier, while listing separate premiums for each car, specifically did not list the U.M. UIM coverages twice, once for each vehicle. Therefore, the Court ruled there was not an expression in conflict with the listing a premium next to a car with an expression of U.M. UIM coverage only once did not, therefore, create the same scenario. However, it reminded us, it hearkened back to, specifically Squire. And in Bruder, I quote, they said it would not be difficult to find an ambiguity created, and this is, again, in contrast to a perfectly clear anti-stacking clause, by listing a bodily injury limit for each person. It could easily be interpreted that an insured should enjoy a total limit of $200,000 in coverage because a figure of $100,000 would be shown for each pickup truck. So distilled to its finest, I mean, you're citing the law and you're making a good argument. In essence, your position is you recognize there were clearly anti-stacking provisions in this policy, but you're saying because of this ambiguity, the anti-stacking provisions don't control it. Is that in essence your argument? Ultimately, that is where I will land. Initially, I wanted to make the point simply that the Supreme Court has said that the same expressions in this case do express multiple policies being sold. So the heart and soul of where we go is to the defendant's position, which is, but I put in an anti-stacking clause. Therefore, that negates this expression. I just wanted to be clear that the Supreme Court has said that these declarations do express multiple cumulative limits. So that then takes us to the heart and soul of, but what does an anti-stacking clause do about that? The answer is the anti-stacking clause does not save anything because according to the court's ruling in Glidden, according to the court's ruling in Squire, a anti-stacking clause then just is in conflict with another portion of the policy. And when there's a conflict between the two, it goes in favor of the insured. Now, the defendant cites Grisiak as an example of a situation where the Supreme Court said, well, a clear anti-stacking clause rescues any other statements in the policy that impart an expression of multiple coverages. However, if you look at Grisiak, number one, it doesn't say that. Number two, in that case, again, there was not put forth the argument of a contrary expression of multiple coverages. The only reason I put a motion on that I bought two coverages because I paid for two premiums. As a matter of fact, the word declaration sheet is not even contained in the opinion. There's no concern given whatsoever by the initiating party in that case and so not even considered by the court anything about a contrary expression in the policy. The anti-stacking clause in this case refers to a single policy highest limit. Yes. Correct? Okay. As did Glidden. And have you have you looked at Grinnell Select Insurance versus Baker, a federal case involving diversity jurisdiction? Justice or Judge Easterbrook wrote that. I don't think I'm familiar with that. He called the anti-stacking clause in cases like this disambiguators. You don't you don't consider the anti-stacking clause separate and apart from the rest of the contract. I believe that's I believe that's the defendant's position in this case. However, that's not consistent with what the Supreme Court has said or a Supreme Court. To continue with Grisak just for a moment, they raised everything but our position in this case. They raised facial ambiguity. They said that the terms in the anti-stacking clause compared to the definitions were ambiguous. They said that the anti-stacking clause was perhaps against public policy. And they also referred to the Menke case for support. And the Menke case, the same thing happened in the Menke case. The Supreme Court said, you know, we got to go with the actual expressions of the parties in the contract in order to discern their intent. We can't go by the subjective belief of the insured in both Menke and in both Grisak. The only thing the insured came forward with as for the court to consider was their subjective beliefs that because they Are you familiar with the onus of the Supreme Court case of Hobbs? I am. I cited Hobbs in support of our position in this case. How does Hobbs support your position? Okay. The Hobbs court drives home the point in another way. In other words, Hobbs and Bruder again are examples of a Menke and a Grisak where in Hobbs and in Bruder, they were confronted with a single policy for two vehicles. The single policy for two vehicles only expressed one UIM coverage for both. It wasn't repeated. Yet the insured argued, yeah, but I'm paying two premiums for each vehicle. That's similar to what we get here, isn't it? No, no, no, no. Here we are paying a premium for each vehicle, but we have the additional component of Squire and Glidden where the coverage is repeated over and over for each vehicle specifically. So in Hobbs, the court, while they're not actually even confronted with a Squire or a Glidden, still want to make sure what they're saying is clear. And they drive the point home in this manner. They review the Yates case. The Yates case is the same case as right here. There was two vehicles, one policy, one declaration sheet. But as here, the carrier went ahead and expressed multiple UIM coverages by repeating one next to each vehicle on the declaration sheet, imparting the same expression that Glidden and Squire say is being imparted here. The Hobbs court reviewed the Fifth District's decision and said that they agreed with the result of that case. In that case, there was a clear anti-stacking clause, but because there was a contrary expression, then the anti-stacking clause expressed, the tie goes to the insured. Hobbs, therefore, approved of that case. It went on to say, I might add, that it harkens back to In this case, your case is different than Hobbs in what we spec specifically. My case is different than Hobbs in a very specific way, and that is that there is a express indication in five declaration sheets that each vehicle bears its own UIM coverage of $100,000, whereas in Hobbs and Bruder, and Hobbs considers Bruder the same as Hobbs, they did not express an additional limit for each of the vehicles. They expressed one limit, listed both vehicles, but next to each vehicle, they listed a premium. So the court had to decide, is that expressing two limits? But isn't the payment of premiums really what's controlling? If you're paying multiple premiums, regardless of what the declaration sheet says, if you're paying two premiums for underinsured coverage, shouldn't that be controlling, and wasn't that the way it was in Hobbs and Bruder? No, Hobbs and Bruder decided it wasn't enough. That's my point. But regardless of what the declaration sheet says, if you're paying a second premium, shouldn't that be the controlling factor? I agree that I would have argued that to be the case in my personal view in Hobbs and Bruder, because actually that point was made very clear in Squire, where the Supreme Court said, hey, wait a second, you're paying a second premium for what? You already have UIM coverage under the first policy. We can only say, we can only read this to mean that you're getting a second level of indemnity coverage, and that's what they said there. But then it didn't seem to dovetail into Bruder and into Hobbs. Rather, they felt that that was more of an expression of the insurer's subjective understanding, and they didn't seem to find it. However, to Justice Hudson's point, the distinction here, and also to Justice Burkett, the distinction here is that there is an explicit proclamation that for each vehicle, I'm getting a separate $100,000 UIM coverage. That's on the declarations. That is written on the declarations. So the question becomes, when one part of the policy documents say one thing, and another part of the policy documents take it away by saying another thing, what is the court to do when you have two contrary expressions? And the answer is that you're supposed to find more liberally in favor of the insured to find that stacking is available. So that is our position. That'll be our position in the lower court on this matter. And like I said in Hobbs, Hobbs actually looked back and cited what they said in Bruder. And I believe their point was, we know, however, that had the limit of liability for bodily injury been listed twice in the declarations. Remember, in Hobbs, we have one declaration sheet, two cars, one listing of UIM coverage. Had it been listed twice on the declaration sheets, and then it quotes from its ruling in Bruder, it would not be difficult to find an ambiguity. In such a case, the policy could easily be interpreted as providing a total limit of $200,000 because from the figure of $100,000 would be shown for each vehicle. Moving on to the actual issue that's been raised here, and that is the interpretation, the statutory interpretation of underinsured motor vehicle. Under the underinsured motor vehicle statute, the statute says the sum of the limits, an underinsured motor vehicle exists at the sum of the limits of liability under the bodily injury liability insurance policies is less than the limits of underinsured coverage provided the insured is defined in the policy at the time of the accident. The State Farm set argues that the definition means that if, as here, the insured has purchased $500,000 in UIM coverage by means of five $100,000 individual cumulative policies, that we are to measure each individual $100,000 policy against the liability coverage of the at-fault driver to determine if he's underinsured. Here, since the at-fault driver had $250,000 in coverage and no individual policy is greater than that amount, State Farm says the Of course, if the McFadden's had purchased the precise same amount of coverage, ENA, one single policy, they would receive the full benefit of their purchase. Alternatively, if the at-fault driver had carried the minimum liability of $20,000, then the McFadden's would have reaped $80,000 from each of their five policies for a total recovery of $400,000 in benefits, almost the full $480,000 they would have gotten if they purchased their coverage in bulk. Or, the McFadden's would get the full benefit of what they purchased if the at-fault driver had no insurance. Thusly, they would get the full $500,000 under the counterpart coverage for UIM. So, using basic statutory interpretation, what is it that we're supposed to do first here? And the answer is, consider the legislative intent and the purpose of the statute. So, is these results the interpretation that should be given this statute in light of the legislative intent? And what is the legislative intent? According to specially concurring Justice Freeman in the Cummings case, the legislature intended to put the insured in the same position he or she would have occupied had the at-fault driver carried liability coverage equal to the state insurance code you would concede allows for anti-staking provisions, correct? Yes, oh, it absolutely does. But again, interpretively, as long as they wouldn't be in conflict with other parts of the policy. Notably, in no legislative history is there any discussion of differentiating coverage purchased by using one policy with coverage purchased by using multiple policies. Rather, the legislative history speaks to the opposite. Mr. Bernstein, Associate Counsel to State Farm, said in front of the Illinois Insurance Study Commission regarding the adoption of this statute, what are we talking about? What we are talking about is the difference in recovery, the difference, if you will, in recoverable limits between what is available and what is purchased by our insured. Never was it discussed that there was going to be disparate treatment between people who purchase UIM coverage with multiple policies from the same carrier. Counsel, I don't want to interrupt, but we did give you some additional time, and you will have an opportunity for reply. So, have a seat. Oh, very good, thank you. And we will give you additional time, Counsel, if you wish as well. Thank you, Your Honor. Good morning, Your Honors. My name is Frank Stevens. I represent State Farm, the plaintiff in this case. Your Honors, I begin my argument today dealing with the stacking issue, and I would like to deal specifically with something that Justice Jorgenson said just a few moments ago, which is the real issue in this case is whether there were multiple premiums. Your Honor, you are referring to something called the premium rule, and the premium rule is discussed at length in the Supreme Court case of Grayshack v. Illinois Farmers, which is cited both here in this court, my brief, and in the lower court's briefs. And in Grayshack, the court said, this court has held that the payment of multiple premiums is of no consequence where the intent of the parties to the insurance contract was manifested in the clear and unambiguous language of an anti-stacking provision. In support of that statement, they've cited to a case called Manky v. Country Mutual, which is another case that's cited throughout the briefs in the lower court. The Manky decision was decided in 1980. Counsel referred to two cases which he says support his position. He referred to Squire, which he said was decided in 1997. In fact, Squire was not decided in 1997, it was decided in 1977. Manky was decided in 1980. If you look at Manky, Manky changed everything. Manky is the clear expression of the Supreme Court that anti-stacking provisions for this coverage are enforceable. And two years later, the Illinois legislature in Section 143.82 codified Manky and specifically provided in Subsection 4 that you can have, I'm sorry, Subsection 5, that you can have anti-stacking language. Grayshack, which was decided in 1997, about 15 years later, relies on both the Manky decision, and if you look at Manky, you'll see in the dissent by Justice Clark, that Justice Clark was quite upset because he said, this decision changes everything. We're now ignoring the decisions that we decided in the 1970s, including Squire. We're now disregarding those decisions. And it's true, it was a dramatic change. And the Grayshack decision acknowledges that, and it says the premium, the premium rule, which Your Honor referred to earlier, is only meant to apply. Actually, what it says is, as a rule of construction, the premium rule should not be applied unless the insurance contract reveals an ambiguity as to the amount of coverage intended. Isn't that really his point? He's saying, he recognizes, I believe, clearly the validity of anti-stacking provisions. He's saying, but in this case, now understanding that this particular policy in this case has an ambiguity. He's, I don't mean to interrupt, Your Honor. That's the question. How do you respond? I respond to him in a couple of ways. First of all, I think he gives the decision in didn't decide the issue that he's raising. The Grayshack decision involved multiple policies. It may not say declarations page, but it was clear that one policy was issued to one spouse, another policy was issued to another spouse. And it boggles the mind to suggest that there's not two declarations pages there. It involved two different policies. The cases that he's citing, for example, Hobbs, a more recent case, Hobbs involved one policy insuring multiple cars. Some insurers do that, some insurers don't. But the underinsured motor statute, 150, I'm sorry, 143A2, refers to insurance companies that issue multiple policies. And there is no prohibition for most of the insurance companies in the state issue multiple policies. Some insurers issue one policy and just add cars to the policies. But the statute says it applies to insurance companies that issue multiple policies. That's number one. And that's what we obviously get here, multiple policies. Multiple policies. Number two, in Grayshack, you had multiple policies issued to different spouses. It's the same situation here. The McFadden's had five vehicles. Some of the policies were for Mrs. McFadden, some were for Mr. McFadden. But it's the same situation in Grayshack. But the statute says that you can have anti-stacking language where you have multiple policies. And Grayshack specifically says you can have anti-stacking language, enforceable anti-stacking language where you have multiple policies. Hobbs dealt with a single policy with multiple cars, but they still found anti-stacking language enforceable. Hobbs actually is a favorite of State Farm because it enforces anti-stacking language. The law that he cited both in the trial court and the law that he cited in the beginning of his argument today is history. It's no longer the law of the state. The law of the state is expressed in Grayshack. And if you read Grayshack, you will see that the anti-stacking language that the Supreme Court specifically found unambiguous is nearly identical, nearly word for word identical to the anti-stacking language that State Farm employs. There is nothing, there's no distinguishable difference between the anti-stacking language in the State Farm policies and the anti-stacking language in the Illinois Farms policies that were reviewed by the Supreme Court in Grayshack. And your position is the declaration of sheets in this case was not inconsistent with the anti-stacking provision? Is that your argument? That's exactly our position. And I think if both Menke and Grayshack address that, they say if you have a clear and unambiguous anti-stacking provision, you can't read these things, these policies in isolation, and you can't treat one part as more important than another. You have to read the policy in its totality. And when you read the policy in its totality, you'll see that it specifically says if more than one policy applies, we are allowed to limit our liability to the policy that provides the highest amount of coverage. That's exactly what... And that trumps the information declaration sheet? No, it doesn't even trump it. I don't even think there's any confusion. I'm not going to concede counsel's argument that it's confusing. It's not confusing. It is... The clear expression of the intent of the parties according to Grayshack is found in the language of the policy. The policy, when read in its whole, shows, just like it did in Grayshack, shows that the limit of liability was... The liability limit was limited to the policy that provided the highest coverage. In this case, Mrs. McFadden received $250,000 from the alleged underinsured motorist, the tort feeder. He's not an underinsured motorist. He talks about the intent of the statute. Well, the clear expression of the intent of the statute is in the language of the statute itself. By definition, this gentleman, Mr. Neese, is not an underinsured motorist under any of those policies. Both the third district and Kapinas have held that State Farm, that an insurance company, is entitled when multiple policies are involved. When multiple policies are involved, an insurance company is allowed to take that set off against each of the policies for underinsured coverage. In this case, $250,000 received by Mrs. McFadden and Mr. McFadden from the each of the five policies. Therefore, there is no underinsured motorist. And when we argue this case at the trial court, Judge Wheaton correctly found that there was no reason to even go to the issue of stacking, because none of the policies provide an underinsured motorist coverage. And you don't have to look any further than the Jones opinion, because the Jones opinion says the same thing. It says you don't have to consider the issue of stacking, because there's no underinsured motorist coverage under any of the policies that the Jones court was considering. Same situation here. It is, the counsel said that there's some secret hidden, in this brief, there's some kind of secret hidden intent with respect to this provision. The Kapinas court says no. It's clear. It's clear that an insurance company is entitled to take that set off against each of the policies. In Kapinas, there were two policies. Each of the policies had $100,000 of coverage. In that, in that case, the policies did stack. But the insurance company was entitled to take the set off against each of the policies for the $50,000 paid by the tortfeasor. Jones follows Kapinas, and it says in Jones, there was no underinsured coverage because each of the policies had $100,000 of coverage, and the tortfeasor had $100,000 of coverage. This is not a complicated case. Grayshack, the statute, and Menke, all hold that an insurance company is entitled to prevent stacking. State Farm is employed language that is nearly identical to the language upheld by the Supreme Court in Grayshack. The fact that multiple premiums were Menke says the same thing. Menke also dismisses the premium rule. And with respect to this other issue, Kapinas and Jones interpret the statute correctly. State Farm is allowed to take this set off against each of the policies on a per policy basis, just as the statute provides, just as subsection four provides, and it's clear and unambiguous language. Your honors, the trial court was correct in finding for State Farm, and I'd ask this court to affirm the trial courts. Do you wish to reply? On the question of whether or not the declarations are in harmony with the anti-stacking clause, because if they're not, we know there's really only one place to go with this, Justice Hudson, you asked him how he felt on it. He said, I won't concede the McFadden's point, and our point being that it expresses five different coverages, multiple coverages that are being sold here. However, conspicuously, he didn't tell us how that's in harmony or how it doesn't say that. And neither in the lower court in their briefing did they do it, nor anecdotally in their briefing before this court, nor in the oral presentation when they were supposed to present the issues of the lower court that were raised. Well, don't you have to read a policy with the contract and the totality? I mean, how do you respond to this cutting to the chase? Let's concede for the moment, and I shouldn't say this, your declaration sheets, read in isolation, may be open to the question of stacking. Here, the anti-stacking provisions in these policies clearly stated that the insured may have other policies, each with a declaration sheet setting forth its own limit. That's exactly what you have here. It goes on to say the anti-stacking provisions clarifies a total coverage will not exceed the limit of liability of the single policy. So they're acknowledging in the anti-stacking provisions, you may have the situation, multiple policies, premiums, but the anti-stacking provisions limits it to this. So how do you get around that? There has not yet been that I've been able to find an anti-stacking provision that's been found to be ambiguous on its face. The anti-stacking provision in this case, the anti-stacking provision in Glidden, the anti-stacking provision in Hobbs, the anti-stacking provision in Greasehack, the anti-stacking provision in Bruder were all, as you say, very clearly understandable. However, the fact that the anti-stacking provision envisions by its terms that there would be other insurance, even issued by this company, and says just ignore that, is in conflict with the fact that in a completely separate part of the policy, they say we're giving you five separate policy coverages of indemnity for $100,000, one on each vehicle, and we are charging you these premiums. So what would an anti-stacking provision ever control, in your opinion? Well, for example, in Bruder, and in Greasehack, and in Hobbs, where there was not a repeat of the UIM coverage or UM coverage, depending upon the case, for each vehicle. So that's where they want to arrive? That's what's creating the ambiguity? According to the Supreme Court, emphatically, that's what creates the ambiguity. As a matter of fact, counsel says somewhere, I didn't quite catch it, that all of Glidden and Squire and everything is just gone now because they became codified. Well, I've never heard, just because the case became codified, it was no longer good. No, I think what he said was Mankey changed the prior case law. And then the legislature took that opinion and codified it. They codified Mankey, but Mankey didn't change the prior case law. Mankey said what the prior case law said, and that is anti-stacking provisions are not against public policy. If they're clear, we're going to enforce them. But in this case, the only thing that's in conflict, and it says in there, is the subjective belief of the insured that they purchased more than one coverage because they had paid two premiums for two cars. The courts just aren't buying that that's enough. That's not enough. What they are selling is what they said in Squire and what they said in Glidden. And post-Mankey and post-statute, we have 2005 Hobbs, which sees fit to remind us all by this comment. We know, however, that had the limit of liability for bodily injury been listed twice on the It would not be difficult to find an ambiguity in such case. The policy could easily be interpreted as providing a total limit of 200, blah, blah, blah. So even when it's speaking about a anti-stacking clause that's not in conflict with a declaration sheet, it reminds us, but were it, were that declaration sheet to repeat for each vehicle a coverage amount, it would be. And that is ambiguous. So the answer to your question is when can the anti-stacking clause be used and be held valid? Whenever the coverage is not repeated for each vehicle, either in one single declaration sheet or on multiple. As far as their recitation of Kapinas and Jones, I think everybody will agree with me that there was not a discussion of legislative intent in order to interpret the There is no reasoning whatsoever given in those statutes. They read the sentence in Kapinas and they say that the word the policy is singular. Therefore, let's take them one by one. And Jones goes, well, that's what Kapinas did. And so that support for our doing it, we're doing it too. I don't know why they didn't address the legislative intent, but we do know Cummings is out there telling us what we're supposed to do with the same sentence, the same sentence that Cummings says, even though it says just the we're going to just compare the limits of the at-fault driver, what it should say is we're going to compare the amount that the insured got from that limit. That's what it should have been, because the legislation would have intended that here. We don't even need to change a word. Counsel, you want to give us your final remarks? Yes. And in final remarks, I would say that we need to interpret the uninsured motorist definition not hyper literally, but rather as it was intended. And that means that the word policy should be construed as figuratively as a legal term of art. That means whatever the financial obligations were that were purchased by that individual by the carrier carriers at the time. Thank you.